Marian F. Harrison
US Bankruptcy Judge

Dated: 11/22/10

# IN THE UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | |
|---|---|
| IN RE: | ) |
| | ) CASE NO. 309-13366 |
| **LANI LOUISE GREER,** | ) |
| | ) JUDGE MARIAN F. HARRISON |
| Debtor. | ) |
| | ) |
| **LANI LOUISE GREER,** | ) ADV. NO. 309-0476A |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **JAMES GATELEY, AND** | ) |
| **ONEWEST BANK, FSB, AND** | ) |
| **SHAPIRO & KIRSCH, LLP** | ) |
| | ) |
| Defendants. | ) |
| | ) |
| **JAMES GATELEY,** | ) |
| | ) |
| Cross and Third-Party Claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| **ONEWEST BANK, FSB, AND** | ) |
| **SHAPIRO & KIRSCH, LLP, AS** | ) |
| **SUBSTITUTE TRUSTEE,** | ) |
| | ) |
| Cross and Third-Party Defendants. | ) |
| | ) |

_____
## MEMORANDUM OPINION
_____

This matter is before the court on OneWest Bank, FSB (hereinafter "OneWest"), Shapiro & Kirsch, LLP (hereinafter "Shapiro & Kirsch"), and James Gateley's motions for summary judgment.

## I. UNDISPUTED FACTS

On May 23, 2007, the debtor obtained a loan from IndyMac Bank, FSB (hereinafter "IndyMac Bank"), to finance the purchase of the real property located at 5521 Cane Ridge Road, Antioch, Tennessee 37013 (hereinafter "Subject Property"). As part of the debtor's purchase of the property, she executed a Deed of Trust and a Fixed/Adjustable Rate Note, which gave IndyMac Bank a security interest in the Subject Property. Shapiro & Kirsch was appointed Substitute Trustee pursuant to a Deed of Trust.

Section 22 of the Deed of Trust states that "[i]f Lender invokes the power of sale, Trustee shall give notice of sale by public advertisement in the county in which the Property is located for the time and in the manner provided by Applicable Law, and Lender or Trustee shall mail a copy of the notice of sale to Borrower in the manner provided in Section 15." Section 15 of the Deed of Trust states, in pertinent part, that "[a]ny notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower

2 - U.S. Bankruptcy Court, M.D. Tenn.

when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means."

On July 11, 2008, IndyMac Bank was closed by the Office of Thrift Supervision. On that same date, certain assets and obligations of IndyMac Bank were transferred and assigned to a newly formed thrift, IndyMac Federal Bank, FSB (hereinafter "IndyMac Federal"), for which the Federal Deposit Insurance Corporation (hereinafter "FDIC") was appointed Conservator.

On November 4, 2008, the newly formed thrift IndyMac Federal appointed Shapiro & Kirsch as the Substitute Trustee under the debtor's Deed of Trust and executed a Substitution of Trustee Notice which was filed and recorded on November 12, 2008. The Substitution of Trustee states in part that "owner and holder of said indebtedness has appointed the Substitute Trustee prior to the first notice of publication as required by T.C.A. § 35-5-101 and ratifies and confirms all actions taken by the Substitute Trustee subsequent to said date of substitution and prior to the recording of this substitution." On November 12, 2008, Shapiro & Kirsch, filed and recorded the Substitution of Trustee Notice for the Deed of Trust for the Subject Property with the Davidson County Register's Office.

On March 19, 2009, the FDIC was appointed Receiver for IndyMac Federal and entered into, among other things, a Loan Sale Agreement with OneWest, pursuant to which

3 - U.S. Bankruptcy Court, M.D. Tenn.

certain loans, agreements, deeds of trust, notes and collateral documents were sold, transferred, and assigned to OneWest. In September 2009, OneWest retained Shapiro & Kirsch to begin foreclosure proceedings on the Subject Property. In a letter, dated September 23, 2009, Shapiro & Kirsch notified the debtor that the foreclosure sale would occur on October 22, 2009, at 10:00 a.m. The letter was sent to the debtor via certified mail and First Class regular mail. The certified letter was returned as unclaimed, and the debtor asserts that she did not receive the First Class letter until October 25, 2009. There is no dispute that the letter was sent in September. The letter stated:

> If you request proof of the debt or any portion thereof or if you request the name of the original creditor within thirty (30) days from the date you receive this letter, the Fair Debt Collection Practices Act requires us to suspend our efforts to foreclose the Deed of Trust on your property, until we mail you the information validating the debt and/or until we provide you with the name of the original creditor.

At the bottom of the letter, the following language was included:

PURSUANT TO THE FAIR DEBT COLLECTION PRACTICE ACT, YOU ARE ADVISED THAT THIS OFFICE IS DEEMED TO BE A DEBT COLLECTOR. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

On October 2, 2009, OneWest executed another Substitution of Trustee Notice, again appointing Shapiro & Kirsch as the substitute trustee. As the duly-appointed Substitute Trustee, Shapiro & Kirsch caused a Substitute Trustee's Sale notice to be published in The Tennessean on three occasions – October 1, 2009, October 8, 2009, and October 15, 2009.

4 - U.S. Bankruptcy Court, M.D. Tenn.

Case 3:09-ap-00476    Doc 89    Filed 11/22/10    Entered 11/22/10 13:19:03    Desc Main
Document      Page 4 of 17

The publication of the Substitute Trustee's Sale notice on October 1, 2009, occurred 20 days prior to the foreclosure sale, which occurred on October 22, 2009. James Gateley purchased the Subject Property at the foreclosure sale and a Substitute Deed of Trust for the Subject Property was signed by James Gateley.

On October 27, 2009, the debtor's bankruptcy attorney sent a faxed letter to Shapiro & Kirsch requesting information regarding the outstanding debt, and on October 29, 2009, Shapiro & Kirsch sent the debtor's attorney a copy of the Deed of Trust, the signed promissory note, and payment history, evidencing the balance of the debt and the name of the original creditor. Upon receiving the letter from the debtor's attorney, Shapiro & Kirsch stopped the foreclosure proceedings and provided the information. Once the information had been provided, Shapiro & Kirsch continued with the foreclosure. The remaining steps included receiving payment from Mr. Gateley and preparing a valid Substitute Trustee Deed, which was then recorded by Mr. Gateley on November 9, 2009.

The debtor filed her Chapter 11 bankruptcy petition on November 20, 2009. She then filed this adversary proceeding on November 23, 2009, against OneWest and Mr. Gateley. In turn, Mr. Gateley filed cross-claims against OneWest and Shapiro & Kirsch. The debtor then amended her complaint to add claims against Shapiro & Kirsch.[1]

---

[1] The debtor alleged additional material facts, but the Court finds that these facts are either non-material or irrelevant.

## II.  SUMMARY JUDGMENT STANDARDS

Federal Rule of Civil Procedure 56(c), as incorporated by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

## III.  DISCUSSION

The debtor raises several claims which the defendants assert should be denied as a matter of law.[2]

---

[2]On October 27, 2010, the Court allowed the debtor to amend her complaint for a second time. The new complaint includes tort claims against Shapiro & Kirsch. At the hearing, the parties announced they were ready to proceed on all issues, so the Court will consider Shapiro & Kirsch's oral motion for summary judgment on this additional count.

## A. Property of the Estate – Vacating the Foreclosure

The debtor asserts that the Subject Property is property of the estate and that the foreclosure sale must therefore be vacated. The Court disagrees.

Pursuant to 11 U.S.C. § 541(a)(1), property of the estate includes all legal or equitable interest of the debtor in property as of the commencement of the case wherever they are located and by whomever they are held.

For this Court to grant relief to the debtor, the Court would have to find that the debtor held some interest in the Subject Property when she filed her Chapter 11 petition. Here, Mr. Gateley purchased the property at the foreclosure sale on October 22, 2009. Consideration was paid by Mr. Gateley, and the Substitute Trustee's Deed was then duly recorded on November 9, 2009. The debtor's Chapter 11 petition was not filed until November 20, 2009, after the foreclosure had been completed.

In Tennessee, the foreclosure was effective upon payment of the consideration and satisfaction of the statute of frauds. ***In re Williams,*** 247 B.R. 449, 451 (Bankr. E.D. Tenn. 2000) ("'[f]or the last 175 years, Tennessee has consistently required the exchange of consideration and the satisfaction of the statute of frauds before a foreclosure sale is deemed final'") (citation omitted). Here, the foreclosure complied with the terms of the Deed of

Trust and with the statute of frauds, both of which only require that notice be sent. *See* T.C.A. § 35-5-101(e). Here, there is no factual dispute that notice was sent. When the debtor received or opened her mail is irrelevant.

Thus, the Subject Property itself belongs to Mr. Gateley as a bona fide purchaser at the foreclosure sale. Accordingly, the Court finds that Mr. Gateley is entitled to summary judgment as a matter of law as to all claims brought by the debtor against him. Furthermore, the Court grants summary judgment to Shapiro & Kirsch and OneWest as to the debtor's cause of action asking that the foreclosure sale be vacated. For the reasons stated, vacatur of the foreclosure is not a remedy available to the debtor in this Court.

### B. Fair Debt Collection Practices Act

The debtor seeks damages against Shapiro & Kirsch for alleged violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"). Specifically, the debtor asserts that the September 23, 2009, letter sent by Shapiro & Kirsch violated the FDCPA. Because the Court finds that Shapiro & Kirsch is not a debt collector as defined within FDCPA, Shapiro & Kirsch is entitled to summary judgment on this issue.

As a matter of law, liability under FDCPA can only attach to those who meet the statutory definition of a "debt collector," and Shapiro & Kirsch is not a "debt collector" within the meaning of the FDCPA. *See* 15 U.S.C. § 1692a(6).

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e. In carrying out this purpose, Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," while Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect a debt." Both of these sections require that a debt collector violate the statute. ***See Montgomery v. Huntington Bank***, 346 F.3d 693, 698 (6th Cir. 2003) (holding that "[a]s a matter of law, liability under [these provisions] can only attach to those who meet the statutory definition of a 'debt collector'").

"In determining whether a party is a 'debt collector,' the focus 'is not on the events of the particular transaction but on the principal purpose of the defendant's business and/or the defendant's regular activities.'" ***Stamper v. Wilson & Assocs.***, 2010 WL 1408585, at *8

9 - U.S. Bankruptcy Court, M.D. Tenn.

(E.D. Tenn. March 31, 2010) (citations omitted). "Whether a party 'regularly' attempts to collect debts is determined by the volume or frequency of its debt-collection activities." *Id.*

A "debt collector" also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests but only for purposes of Section 1692f. 11 U.S.C. § 1692a(6). Accordingly, a person whose business has the principal purpose of enforcing security interests but who does not otherwise satisfy the definition of a debt collector is subject ***only*** to 15 U.S.C. § 1692f(6). ***See Montgomery v. Huntington Bank,*** 346 F.3d at 699-700 (citing ***Jordan v. Kent Recovery Serv., Inc.,*** 731 F. Supp. 652, 659 (D. Del. 1990)). ***See also Johnson v. Wilshire Credit Corp.,*** 2009 WL 559950, at *4 (E.D. Tenn. March 5, 2009) ("an entity whose business has the principal purpose of enforcing security interests, without more, is not subject to any of the provisions of the FDCPA except for § 1692f").

Based on the facts, Shapiro & Kirsch is not a debt collector under the FDCPA as it clearly was acting to enforce a security interest. Any inclusion of the "boilerplate" FDCPA language in the September 23, 2009, letter was merely precautionary. Accordingly, any factual allegations by the debtor relating to whether the FDCPA was complied with are non-material. The Court finds that Shapiro & Kirsch is entitled to judgment as a matter of law on the claims relating to the FDCPA.

## C. Tennessee Consumer Protection Act

The debtor asserts violations of the Tennessee Consumer Protection Act (hereinafter "TCPA") by Shapiro & Kirsch who was acting on behalf of OneWest. As a matter of law, the debtor is not entitled to relief under TCPA.

TCPA is designed to "protect consumers . . . from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce." T.C.A. § 47-18-102(2). For TCPA to apply, "the unfair or deceptive acts must affect trade or commerce, as defined by the Act." ***Davenport v. Bates***, 2006 WL 3627875, at *17 (Tenn. Ct. App. Dec.12, 2006). The terms "trade" and "commerce" are defined as "the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things wherever situated." T.C.A. § 47-18-103(11).

Applying these definitions, Tennessee Courts have held that TCPA does not apply to a bank's repossession of collateral that was used to secure a loan. *See **Pursell v. First Am. Nat'l Bank***, 937 S.W.2d 838, 842 (Tenn. 1996). In ***Pursell,*** the Tennessee Supreme Court held that TCPA did not apply to a bank's repossession of collateral because it did not affect "trade or commerce." *Id.* at 839. In that case, the Tennessee Supreme Court recognized that "[t]hough the definitions of 'trade or commerce' contained within the Tennessee Consumer

Protection Act are broad, they do not extend to [a] dispute, which arose over repossession of the collateral securing the loan." *Id.* at 842. *See also Davenport v. Bates,* 2006 WL 3627875, at *19 (TCPA should not be interpreted to "cover repossessions without a clear expression of our legislature's intention to cover these transactions"); *Hunter v. Wash. Mut. Bank,* 2008 WL 4206604, at *5 (E.D. Tenn. Sept.10, 2008) ("[t]he Supreme Court of Tennessee has held that the TCPA does not apply to repossession and collateral disposition activities because that conduct does not affect the 'advertising, offering for sale, lease or rental, or distribution of any goods, services, or property' as required by the TCPA") (citation omitted); *Schmidt v. Nat'l City Corp.*, 2008 WL 5248706, at *8 (E.D. Tenn. Dec.17, 2008) ("actions of a bank in repossessing and disposing of its collateral do not constitute violations of the [TCPA], even if the bank acted wrongfully in repossessing the collateral").

In the present case, the debtor asserts that the letter notifying her of foreclosure proceedings was deceptive because it informed the debtor of rights under the FDCPA which were either not followed or not even applicable. Based on the above-discussed cases, TCPA does not apply, and OneWest and Shapiro & Kirsch are entitled to summary judgment on this claim.[3]

### D. Equitable Subordination

---

[3]Even if TCPA somehow applied in this situation, the debtor cannot show that she was deceived by the letter that she did not open until after the foreclosure sale took place.

OneWest argues that it is entitled to summary judgment on the debtor's assertion that its claim should be equitably subordinated. The Court agrees with its argument.

In order for the debtor to establish that equitable subordination is appropriate in this case, she must allege and prove that: (1) OneWest engaged in some type of inequitable conduct, (2) the misconduct resulted in injury to the creditors of the bankrupt or conferred an unfair advantage to OneWest, and (3) the equitable subordination of OneWest's claim was not inconsistent with the provisions of the Bankruptcy Code. ***Bayer Corp. v. Masco Tech, Inc. (In re Autostyle Plastics, Inc.),*** 269 F.3d 726, 744 (6th Cir. 2001) (citing ***In re Baker & Getty Fin. Servs., Inc.***, 974 F.2d 712, 717-18 (6th Cir.1992)). "Satisfaction of this three-part standard does not mean that a court is *required* to equitably subordinate a claim, but rather that the court is *permitted* to take such action." ***Id.*** (emphasis in original) (citation omitted).

Non-insider, non-fiduciary claims, such as OneWest's claim, raise the level of pleading and proof to support an equitable subordination claim. As a matter of law, the debtor is required to plead and prove gross and egregious conduct before this Court can equitably subordinate OneWest's claim. ***First Nat'l Bank of Barnesville v. Rafoth (In re Baker & Getty Fin. Servs. Inc.),*** 974 F.2d 712, 718 (6th Cir. 1992). ***See also First Alliance Mort. Co. v. Lehman Commercial Paper, Inc.,*** 471 F.3d 977, 1006 (9th Cir. 2006) (citation

omitted) ("[t]he primary distinctions between subordinating the claims of insiders versus those of non-insiders lie in the severity of misconduct required to be shown, and the degree to which the court will scrutinize the claimant's actions toward the debtor or its creditors. Where the claimant is a non-insider, egregious conduct must be proven with particularity").

In the present case, there are no factual allegations that, if true, would amount to "gross misconduct tantamount to 'fraud, overreaching or spoliation to the detriment of others.'" *Hamerly v. Fifth Third Mort. Co. (In re J & M Salupo Develop. Co.)*, 388 B.R. 795, 805 (B.A.P. 6th Cir. 2008). Accordingly, OneWest is entitled to summary judgment on this count.

### E. Negligence Claims

In the debtor's second amended complaint, she added claims against Shapiro & Kirsch for negligent misrepresentation (supplying false information to the debtor), negligence (failure to use ordinary or reasonable care in connection with the foreclosure and drafting the letter), gross negligence or recklessness (by writing and sending the letter), and intentional infliction of emotional distress (recklessly disregarding the possibility that the debtor's reliance on the letter would likely cause emotional distress). All of these claims rely upon the alleged deceptive nature of the September 23, 2009, letter that informed the debtor of the foreclosure sale set for October 22, 2009. Again, while the Court is sympathetic to the debtor's plight, she is simply reaching for straws in this latest addition to her complaint.

First, the negligence claim fails because Shapiro & Kirsch only owed a duty to the debtor to conduct the foreclosure sale in accordance with applicable statutes and as authorized by the Deed of Trust. *See **Staples v. CBL & Assoc.**,* 15 S.W.3d 83, 89 (Tenn. 2000). As discussed earlier, Shapiro & Kirsch did this. Moreover, Shapiro & Kirsch's conduct was not the cause of the debtor's alleged injury. Instead, it was the debtor's default on her mortgage that started the chain of events which eventually led to the foreclosure sale of her home.

Similarly, the negligent misrepresentation claim is without merit. It is impossible for the debtor to have relied on the September 23, 2009, letter in connection with the scheduled October 22, 2009, foreclosure sale because the debtor, as she alleges, did not open the letter until October 25, 2009. Even if she had received and read the September 23, 2009, letter prior to the foreclosure sale, her reliance on that letter would be unreasonable in light of the subsequent foreclosure sale notice.

Concerning intentional infliction of emotional distress, the three essential elements are: "(1) the conduct complained of must be intentional or reckless, (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." ***Searle v. Harrah's Entm't, Inc.,*** 2010 Tenn. App. LEXIS 627, at *27-28 (Tenn. Ct. App. Oct. 6, 2010) (citing ***Bain v. Wells***, 936 S.W.2d 618,

15 - U.S. Bankruptcy Court, M.D. Tenn.

622 (Tenn. 1997)). As previously discussed, federal courts have noted that letters similar to the September 23, 2009, letter at issue, represent reasonable conduct; that is a far cry from outrageous conduct that is not tolerated by civilized society. Additionally, there is no evidence in the record that the September 23, 2009, letter has resulted in a serious mental injury to the debtor.

Again, the debtor cannot claim that the letter, which she did not read, was the proximate cause of the loss of her home. The debtor's own affidavit states that had she been aware of the pending foreclosure sale, she would have contacted her attorney to take steps to avoid the foreclosure. The Court does not doubt that the debtor had contacted Shapiro & Kirsch about getting her loan balances current, but she cannot complain that Shapiro & Kirsch and OneWest somehow mislead her or acted negligently in regards to her foreclosure when she did not read the letter until after the foreclosure sale had been held on October 22, 2009.

The court finds that Shapiro & Kirsch and OneWest are entitled to summary judgment as a matter of law on all counts relating to the tort actions alleged by the debtor.

### F. Fourteenth Amendment Claim

The debtor claims that Shapiro & Kirsch's actions violated the Fourteenth Amendment to the United States Constitution. It is settled law that the constitutional protection afforded by the Fourteenth Amendment applies to state, not private actions. The

16 - U.S. Bankruptcy Court, M.D. Tenn.

Case 3:09-ap-00476    Doc 89    Filed 11/22/10    Entered 11/22/10 13:19:03    Desc Main
Document    Page 16 of 17

cases cited by the debtor to support this claim all concern due process rights in governmental actions to enforce tax liens. As a matter of law, the debtor is not entitled to relief on this issue.

## IV. CONCLUSION

For the reasons stated above, the Court finds that the motions for summary judgment filed by OneWest, Shapiro & Kirsch, and Mr. Gateley should be granted.

An appropriate order will enter.

**This Memorandum Opinion was signed and entered electronically as indicated at the top of the first page**

This Order has Been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.